IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| FREDA JOAN HARDMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CV 01-J-3180-NE |
| ) | |
| JASON KEETON, TAMMY NASH, ) | |
| and THE CITY OF ALBERTVILLE, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Currently, pending before the court is the defendants' motion for summary judgment (doc. 16), defendants' brief in support of said motion, defendants' evidentiary submission (doc. 17), plaintiff's response brief (doc. 19), plaintiff's evidentiary submission (doc. 20), and defendants' reply. The court has reviewed the motion and the parties' other submissions.

**I. Factual Background**

The plaintiff, Freda Hardman, a used car dealer, sold a red Chevrolet Camaro to an individual and financed his purchase. Plaintiff's Depo. at 35. Plaintiff reported this vehicle stolen after the vehicle's purchaser failed to make two consecutive payments. *Id.* at 37-39. On December 23, 1999, plaintiff, along with her husband Wayne, was driving north on Highway 75 outside of Albertville when she saw that a red Camaro had been pulled over by the police. *Id.* at 33. After driving past the scene, plaintiff had her

1

husband turn around in order to see if the Camaro that had been pulled over was the one that she had reported stolen. *Id.* Plaintiff intended to compare the vehicle identification number of the car they reported stolen with the one pulled over. *Id.*

The Hardmans pulled in behind the police car that had pulled over the Camaro and noticed a person being detained by the police. *Id.* at 49-51. This individual was not the one who had purchased a Camaro from plaintiff. *Id.* at 37. Both Mr. Hardman and plaintiff exited their vehicle and approached the Camaro. *Id.* at 53. Mr. Hardman then looked in the Camaro's window in order to compare its VIN number with the one reported stolen.[1] *Id.* at 56. Plaintiff stood several feet away from the Camaro. *Id.* After Mr. Hardman began looking for the VIN number, one of the police officers performing the traffic stop, defendant Officer Jason Keeton, told Mr. Hardman to, "Get away from that car." *Id.* at 58. Mr. Hardman moved several feet away from the Camaro and tried to explain to the officer what he was doing. *Id.* at 59. Plaintiff then began to explain what they were doing, to which Keeton is alleged to have stated, "Just shut your mouth and get back in the car." *Id.* at 60. Plaintiff then alleges that she turned to return to her car while Mr. Hardman continued to talk to Officer Keeton. *Id.* at 63. Officer Keeton responded to Mr. Hardman by telling him, "I told you to get in [your] car and shut your mouth." *Id.* As Mr. Hardman began to leave, plaintiff stated, "Come on Wayne. These are two young

---

[1] Mr. Hardman was examining the VIN number of the Camaro despite that fact that he did not have the VIN number of the Camaro which had been reported stolen with him. That VIN number was written down on a slip of paper in plaintiff's possession.

hotheads and they're not going to help us." *Id.* at 66. After Officer Keeton is alleged to have threatened to arrest plaintiff, she responded, "Kiss my ass." *Id.* Officer Keeton then informed plaintiff that she was under arrest and told her to put her hands out. *Id.* at 72. Plaintiff refused the officer's instructions and stating., "If you're going to arrest me, you get a lady officer up here. You're out of control." *Id.* Officer Keeton then briefly returned to his patrol car. *Id.* at 73. While Officer Keeton was at his car, plaintiff and her husband engaged in a conversation about Officer Keeton. *Id.* at 78.

Both police officers then grabbed plaintiff, pushed her against the side of her car and handcuffed her. *Id.* at 79-80. Plaintiff was then placed in the patrol car and taken to the police station. Plaintiff alleges that upon arriving at the police station, defendant Officer Tammy Nash pushed plaintiff out of the car and onto the concrete ground. *Id.* at 93-96. Plaintiff was then taken into the station and jailed. Her bond was posted and she was released. Plaintiff was later tried and convicted of obstructing government operations. (doc. 17 at Exh. B).

Plaintiff brought this action under 42 U.S.C. § 1983 and § 1988 for violation of her civil rights.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the

moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-moving party to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the non-moving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. Pro. 56(c); *Matsushita*, 475 U.S. at 587. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"The mere existence of some factual dispute will not defeat summary judgment

4

unless that factual dispute is material to an issue affecting the outcome of the case...A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991).

### III. Analysis

A municipality may not be held liable under § 1983 simply because it employs a tortfeasor. *Board of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). In order to hold a municipality liable under § 1983, a municipal "policy" or "custom" that served to cause plaintiff's injury must be identified. *Id.* at 403. Additionally, plaintiff must also demonstrate that this custom or policy was the "moving force" behind the injury alleged. *Id.* at 404.

Plaintiff is simply unable to demonstrate that any "policy" or "custom" of the City of Albertville ("the City") caused plaintiff's alleged injury. Plaintiff asserts that the City should be liable based on a "custom"or "policy" of not having an adequate policies relating to the training and supervision of its police officers. However, there are only extremely limited circumstances when "an allegation of a failure to train or supervise can be the basis for liability under § 1983." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th

Cir. 1998). This situation occurs only when (1) the municipality inadequately trains or supervises its employees, (2) this inadequate training is a city policy, and (3) this city policy causes the inadequately trained employees to violate a plaintiff's rights. *Id.* To demonstrate that inadequate training is a city policy, a plaintiff may show a "deliberate or conscious choice" or a "deliberate indifference" the training or supervision of defendant's employees. *City of Canton, Ohio v. Harris*, 489 U.S. 387, 388-89 (1989); *Gold v. City of Miami, Florida*, 151 F.3d 1346, 1350-51 (11th Cir. 1998). In order to meet this standard, plaintiff must demonstrate notice on the part of a city of prior constitutional violations relating to this inadequate training/supervision. *Gold*, 151 F.3d at 1351. The Supreme Court also noted that inadequate training may be "so obvious" as to not require prior notice on a city. *City of Clanton*, 489 U.S. at 390; *Gold*, 151 F.3d at 1351-52. The sole example cited by the Supreme Court as exemplifying this obviousness of inadequate training is the need to train officers regarding the use of deadly force where firearms are provided to officers. *Id.*

  Plaintiff has simply failed to put any evidence of notice or sufficient evidence to demonstrate that the City has failed to adequately train or supervise its police officers to such an "obvious" degree. Plaintiff bases this inadequate training argument on the assertions that (1) the city does not have an adequate policy on the use force, (2) the city failed to ensure that officers must report misconduct of fellow officers to their superiors, (3) the city fails to require officers to file a report when confrontations with individuals

6

occur, (4) the city fails to adequately document citizen complaints, and (5) the city fails to adequately investigate citizen complaints.

However, plaintiff's sole evidence of the City's inadequate use of force policy is the fact that the City of Albertville Police Department operating procedures cites to the Alabama Code as its policy on the use of force. Plaintiff's Exh. 4. It is impossible for this or any court to say that the law of the state of Alabama regarding the use of force when making arrests is an inappropriate or inadequate policy to guide police officers in using force.

In regard to the other alleged inadequacies, plaintiff's sole evidence is that an incomplete copy of the City of Albertville Police Department operating procedures fails to contain a policy relating to these issues.[2] *Id.* This is insufficient to create even a question of fact that these alleged inadequacies actually exist.

Even if the inadequacies listed above as (2)-(5) actually existed, these do not rise to the level necessary to constitute such an "obvious" inadequacy of training and supervision so that no notice to the city of prior constitutional violations is needed.

Due to the plaintiff's failure to adequately set forth a policy or custom of the City of Albertville that led to plaintiff's injuries, defendant City of Albertville's motion for summary judgment is due to be granted.

Plaintiff also brings claims against Officers Keeton and Nash for violating her

---

[2]Plaintiff has only included a xerox copy of six pages out of over thirty-one pages of the operating manual. Plaintiff's Exh. 4.

rights as protected by § 1983.  However, defendants assert that they are protected by qualified immunity from plaintiff's § 1983 claims.  In order for an individual to come within the protection of qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) quoting *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991).  There is no dispute that Officers Keeton and Nash were acting within the scope of their discretionary authority when they arrested plaintiff.  The officers were in the process of arresting plaintiff for resisting arrest and obstructing governmental operations when the alleged deprivation of rights occurred.  Plaintiff's Depo. at 72.  That the officers were acting in the scope of their discretionary authority is bolstered by the fact that plaintiff was ultimately found guilty of obstructing governmental operations.  Defendant's Exh. B.

As defendants were acting within their discretionary authority, the burden is on the plaintiff to demonstrate that the officers are not entitled to qualified immunity.  *Lee*, 284 F.3d at 1194.  The Supreme Court has set forth a two part test for making this determination.  First, this court must determine whether, "[t]aken in the light most favorable to the party asserting the injury,...the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed. 2d 272 (2001).  If the court finds that a right has been violated based upon the plaintiff's version of the facts, it must be determined whether "the right was clearly

established...in light of the specific context of the case, not as a broad general proposition." *Id.*; *see also Lee*, 284 F.3d at 1194.

The facts alleged by plaintiff in the present action do not show a violation of any of plaintiff's constitutional rights. The Supreme Court has applied an "objective reasonableness" standard to determine whether excessive force was used in violation of the Fourth Amendment. *Graham v. Conner*, 490 U.S. 386, 388 (1989); *see also Pace v. Capobianco*, 283 F.3d 1275, 1281 (11th Cir. 2002). The standard requires this court to determine "whether the officer's actions are objectively reasonable in the light of the facts confronting the officer regardless of the officer's intent or motivation." *Montoute v. Carr*, 114 F.3d 181, 183 (11th Cir. 1997).

Under plaintiff's own version of the facts, the officers repeatedly warned plaintiff that she needed to move away from the car and only after she defied their repeated warnings did they move to arrest her. Plaintiff's Depo. at 58-72. During the arrest, plaintiff claims that the fact that she was grabbed, pushed against a car and handcuffed constituted an excessive use of force. Plaintiff's Depo. at 73. These facts do not demonstrate any unreasonable use of force on the part of the officers. While the officers may not have been gentle with the plaintiff, they can not be expected to be so when arresting an individual for resisting arrest. As noted by the Court of Appeals for the Eleventh Circuit, "the typical arrest involves some force and injury." *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002).

Additionally, plaintiff asserts that her rights were violated when she was allegedly pulled out of the patrol car upon arriving at the police station and fell on the ground. However, by plaintiff's own admission, Officer Nash first asked her to exit the vehicle. Plaintiff's Depo. at 94. It was not until plaintiff refused Officer Nash's initial request that the officer had to pull plaintiff from the patrol car. *Id.* Officer Nash's treatment of plaintiff in this regard cannot be seen as an unreasonable use of force in light of the specific facts of this case, i.e. plaintiff's arrest for resisting arrest and obstructing governmental operations. Defendants Nash and Keeton are thus entitled to qualified immunity based on plaintiff's failure to allege a constitutional violation by them.

As defendants Tammy Nash and Keeton are protected from suit in their individual capacities based upon qualified immunity, they are entitled to summary judgment as to plaintiff's claims against them.

### IV. Conclusion

Based upon all of the foregoing, defendants' motion for summary judgment is **GRANTED**.

**DONE** and **ORDERED** this the 30 day of October, 2002.

Inge P. Johnson
U.S. District Court